Stuyvesant Bank *v.* National Mechanics' Banking Association.

THE STUYVESANT BANK *v.* THE NATIONAL MECHANICS' BANK
ING ASSOCIATION.

(GENERAL TERM, FIRST DEPARTMENT, JUNE, 1872.)

In the New York Clearing House Association, checks received for clearance are credited to the sender and charged to the drawee. Their validity is not open to dispute there, but must be settled by the parties, who are to receive and return disputed checks on the same day to the sender, who must reimburse the drawee. Whether checks paid through the clearing house and charged by the drawee to his customer are paid within the rule which charges a drawee with the responsibility of mistaking his drawer's signature, *quere.*

But held that repayment by the sender of checks so paid is a waiver of the rule.

So, also, does it waive delay of the drawee beyond the day in returning the check.

Nor is a repayment induced by threat to discontinue exchanges void for coercion.

The M. and M. Bank, a member of the clearing house, and agent there for the plaintiff, which was not, received from the latter on different days several forged checks taken on deposit from the forger. The M. and M. Bank credited the checks to the plaintiff and sent them to the clearing house, where the M. and M. Bank was credited, and the defendant, the drawee, another member of the clearing house, charged with them. The defendant, without noticing the absence of a private mark understood between them, charged the checks as received from the clearing house to the supposed drawers. On receipt of the last check, several days after the receipt of the others, the defendant discovered the forgery, and on the same day tendered the checks and demanded payment of them from the M. and M. Bank, which referred it to the plaintiff. The plaintiff had meanwhile paid the forger's drafts to the amount of the checks deposited, and refused to pay. The M. and M. Bank then gave the defendant its own check for the last of the forged checks, and the defendant sent the remaining forged checks with the M. and M. Bank's check through the clearing house to the M. and M. Bank. The latter, complying with the clearing house rules, paid them all and charged the amounts to the plaintiff's account, and sent the latter the four forged checks. The plaintiff retained the checks and tendered them, the next day, to the defendant and demanded payment and was refused. Some twenty days after, the plaintiff sent them by its agent, the M. and M. Bank, through the clearing house to the defendant, which paid them and directly returned them through the clearing house to the M. and M. Bank, with

notice that if they were sent back through the clearing house it would discontinue its exchanges with the M. and M. Bank. The latter bank returned and charged the checks to the plaintiff. The plaintiff, as assignee of the M. and M. Bank, sued to recover the amount of the checks.

*Held*, that the M. and M. Bank had waived its right, if any, to insist upon the acts of the defendant as payment of a forged check by the drawee, and had affirmed the acts of the defendant in obtaining repayment.

That the waiver was not void for coercion.

That having received the checks and passed them to the plaintiff's credit in its ordinary account, the M. and M. Bank became actual owner of the checks and was rightly treated as principal; but *held*, also, that if not rightly so treated it might not, as agent of the plaintiff, refund to the defendant without actual authority.

*Held*, further, that the plaintiff having given authority to the M. and M. Bank to act for it under the clearing house rules, which required it to act as principal, the plaintiff was bound as to third parties by the acts, as principal, of the M. and M. Bank.

THIS was a motion for a new trial upon a case made and exceptions ordered to be heard in the first instance at the General Term.

The plaintiff claimed to recover for moneys, which it alleged were inequitably and illegally withheld from it, as the assignee of the Manufacturers' and Merchants' Bank of New York city, by the defendant.

It appeared upon the trial that the plaintiff, an incorporated bank of New York city, received on deposit on the 28th and 29th of June, and 1st and 2d July, 1867, four different checks, one on each day, and respectively bearing date on the day preceding that of their respective deposits. The checks purported to be drawn by White, Morris & Co., a well known firm of bankers in the city, upon the defendant, the National Mechanics' Banking Association, and were made payable to the order of one Definganiere, also known as a merchant in the city, in whose name they purported to be indorsed, and to whose credit they were deposited.

The plaintiff was not a member of the New York Clearing House Association, but employed one of its members, the Manufacturers' and Merchants' Bank, to send its exchanges

Stuyvesant Bank *v.* National Mechanics' Banking Association.

through the clearing house; and the course of business was for the plaintiff to put up its checks and vouchers, demandable at banking houses in the city, in packages, with slips indicating the amount of each separate item, and to send them, so put up, to the Manufacturers' and Merchants' Bank. The latter bank gave credit for the gross amount to the plaintiff and made up a new slip, incorporating that of the plaintiff, which it sent with the package and its own exchanges to the clearing house. The plaintiff kept a regular account with the Manufacturers' and Merchants' Bank, and the latter rendered a daily account and sent its vouchers to the plaintiff.

On the days upon which respectively the plaintiff received the checks for the deposit and credit of the supposed indorsee it forwarded them in the usual manner to the Manufacturers' and Merchants' Bank, where it received credit for the several amounts of the checks, in the aggregate for $10,546.18; and from whence the checks were sent to the clearing house in the usual manner. At the clearing house the checks were charged to the defendant, and the amount of them was allowed to the Manufacturers' and Merchants' Bank.

It also appeared that the defendant was a member of the Clearing House Association, and that the business of that association was carried on under a written constitution and code of rules, by which each of its members agreed to be bound; that it was provided by one of the rules as follows: "Section 14. Errors in exchanges and claims arising from the return of checks, or from any other cause, are to be adjusted directly between the banks who are parties to them, and not through the clearing house; the association being in no way responsible in respect to them;" and by another: "Section 15. * * * All checks, drafts, notes or other items in the exchanges returned as 'not good' or missent shall be returned the same day directly to the bank from which they were received; and the said bank shall immediately refund to the bank returning the same the amount which it had received through the clearing house for the said checks, drafts, notes or other items so returned to it in specie or legal tender

notes;" and, for neglect to comply with these rules, the delinquent member of the association was liable to expulsion.

The firm of White, Morris & Co., which was a depositor with the defendant, had notified the defendant of a private mark which would be placed upon the checks of that firm; and the understanding was that checks not so marked should be returned for examination and marking to W., M. & Co. The checks in question did not bear or purport to bear the mark agreed on; but when they were presented to the defendant, through the clearing house, they were received and charged to the account of W., M. & Co. On the 3d July, when the last of the four checks came in to the defendant, it was discovered that the name of White, Morris & Co. had been forged; and it was subsequently ascertained that the name of Definganiere, the indorsee and supposed depositor, had been also assumed and forged by the real depositor.

On the same day of the discovery of the forgery of White, Morris & Co.'s signature, the defendant sent its messenger with all the forged checks to the Manufacturers' and Merchants' Bank and demanded payment of them. The messenger was there directed to ask payment of the plaintiff, with the promise, by the Manufacturers' and Merchants' Bank, of payment of the last check, in case of the plaintiff's refusal. The plaintiff had at that time cashed drafts of the supposed Definganiere, its depositor, to the full amount of the four forged checks, and refused payment; and the Manufacturers' and Merchants' Bank gave its check for the last of the checks, viz., the one which had been returned to it on the day of presentation at the clearing house.

The defendant, on the 5th July, sent the Manufacturers' and Merchants' Bank's check and the three forged checks through the clearing house back upon the Manufacturers' and Merchants' Bank, although in violation of the clearing house rules; and the latter bank, acting in conformity with the rule, paid them and received the checks, and charged the plaintiff with the amount so paid, and sent the four checks to the plaintiff. On the succeeding day, July 6th,

the plaintiff presented the four checks at the defendant's bank and tendered them to its cashier and officers, and demanded payment of their amount; but the defendant refused to receive the checks or to pay.

On the 27th July the plaintiff sent the forged checks through the Manufacturers' and Merchants' Bank, but in the usual sealed package to the clearing house, as liabilities of the defendant, which paid them, but at once returned them to the Manufacturers' and Merchants' Bank through the clearing house, and gave notice to that bank that, upon any further return to defendant of the checks through the clearing house, exchanges between the defendant and Manufacturers' and Merchants' Bank would be broken off. The Manufacturers' and Merchants' Bank paid the checks when returned from the clearing house, and took them into its possession; again charging the plaintiff with them and returning them to the plaintiff. The plaintiff then obtained an assignment of its claim against the defendant from the Manufacturers' and Merchants' Bank, and, after demanding the money from the defendant, commenced this suit thereon.

Upon the trial the judge dismissed the plaintiff's complaint after hearing its own testimony.

*S. K. Wrightman*, for the plaintiff.

*Jno. S. Burrill*, for the defendant.

Present—INGRAHAM, P. J., LEONARD and GILBERT, JJ.

By the Court—GILBERT, J. We are unable to discover any ground upon which we could properly reverse the judgment below. Treating the Merchants' and Manufacturers' Bank as the principal in the transaction, there was no valid objection to the defendants demanding and receiving the amounts of the forged checks. The only objection stated is, that the defendants being the drawers of the forged checks, are presumed to know the signature of the drawer; and

that having received the checks through the clearing house and charged them to the account of their customers, whose names had been forged, they were precluded from making such demand. The answer to this is, that it is at least doubtful whether the facts make out a payment of the forged checks, within the meaning of the rule referred to, or whether that rule can properly be applied to a case like this. The only facts making out a payment to the Merchants' and Manufacturers' Bank occurred at the clearing house, and consisted in charging the defendants and crediting the Merchants' and Manufacturers' Bank with the checks. And this was done under a rule assented to by both parties, giving the right to the defendants to return the checks to the Merchants' and Manufacturers Bank on the same day they received them from the clearing house, and requiring that on being so returned, the Merchants' and Manufacturers' Bank should refund the amount thereof to the defendants. The only departure from the rule thus established was, that the checks were not returned on the same day. The question, therefore, was one fairly open to dispute. But, if not, surely it was competent for the Merchants' and Manufacturers' Bank to waive the delay in returning the checks. And even if such waiver was induced by the defendants' threatened refusal to make further exchanges with them, it is none the less effectual; for the defendants might, without assigning any reason, break off such exchanges. There was nothing coercive or compulsory, therefore, in their insisting upon the amount of the forged checks being refunded as a condition of continuing such exchanges. The subsequent conduct of the Merchants' and Manufacturers' Bank is proof that they did not act under compulsion, and in legal effect is a complete affirmance of the transaction.

We see no reason why the Merchants' and Manufacturers' Bank should be treated otherwise than as principals. They received the checks deposited with them by the plaintiff, and passed them to the credit of the latter. The account seems to have been kept in the usual mode in which accounts are

kept between a bank and its customers. The general rule certainly is that money or checks paid into a bank cease to belong to the person paying them in, and become the property of the bank. (*Foley* v. *Hill*, 2 H. L. Cas., 36.)

We perceive nothing in the nature of the dealings between the plaintiff and the Merchants' and Manufacturers' Bank to take them out of this general rule. If these views are correct they had nothing to assign to the plaintiff. But even if, as is contended by the plaintiff, the Merchants' and Manufacturers' Bank acted as their agents merely, and they acted without actual authority in refunding the amount of the forged checks to the defendants, that fact would create no right of action against the defendants in favor of the plaintiff, but would, at most, render the Merchants' and Manufacturers' Bank liable to the plaintiff. As between the defendants and the Merchants' and Manufacturers Bank, the latter, from the nature of the dealings and under the rules of the clearing house, could be treated as principals only.

The plaintiff having assented that such should be the nature of the agency, thereby conferred upon the agent, as far as third persons are concerned, authority to do in the premises whatsoever they themselves might do. (Story Ag., 60, 106.)

For these reasons the judgment appealed from must be affirmed, with costs.

LEONARD, J. The Manufacturers' and Merchants' Bank voluntarily paid the check for $4,309 to the defendants upon request, without any objections, and that sum was thereby removed from any further reasonable controversy. The defendants retained the first three checks for so long a time after the presentation and settlement at the clearing house that it became quite probable that the defendants could not maintain a claim to have the amount repaid, but that condition of the case was changed by the subsequent transactions. The mere passing of the checks through the clearing house from one bank to the other did not affect their respective rights, if immediate action had been taken to notify the bank

from which the check had been received of the error or wrong committed. But the plaintiff retained the checks for many days after they had been returned by the defendants to the Manufacturers' and Merchants' Bank, and by the latter bank charged and returned to the plaintiff's bank. This must be regarded as a voluntary payment or as operating to that effect by acquiescence or ratification. Neither the Manufacturers' and Merchants' Bank nor the plaintiff's bank notified the defendants' bank after the return of the checks by the defendants' bank through the clearing house within the time allowed by the rules of the clearing house that they did not intend to be bound as upon a payment of that amount to the defendants, nor did they assert their rights, if they had any, in due season to entitle them to be relieved from the presumption that the transaction was to be regarded as voluntary. There is no fact in the case to support an argument that the payment was obtained by coercion. The exceptions of the plaintiff must be overruled and judgment ordered for the defendants.

Judgment affirmed.