SZWENTO JUOZUPO LET DRAUGYSTES (ST. JOSEPH SOCIETY),
Respondent, *v.* MANHATTAN SAVINGS INSTITUTION, Appellant.

First Department April 13, 1917.

Bills and notes — liability of savings bank for paying forged draft —
what does not constitute payment — liability of commercial bank
for payment on forged signature.

Where the president of a membership corporation presented its pass book
and a draft, on which he had forged the signatures of its trustees, to a
savings bank, the by-laws of which provide that drafts on deposits
might be made by an order in writing, and that payments might be
made "in specie, bills or by check," and after the exercise of reasonable
care in determining the genuineness of the signatures on the draft a
check was delivered to the president of said corporation drawn to its
order, on which he forged the signatures of the trustees and drew the
money, which he converted to his own use, neither the delivery of the
check nor the subsequent payment thereof on the forged indorsements
constituted payment, and the defendant savings bank is liable to the
plaintiff.

Although a commercial bank is liable as matter of law for payment on a
forged signature, a savings bank is bound only to exercise reasonable
care in determining the genuineness of the signatures on a draft drawn
on a deposit.

APPEAL by the defendant, Manhattan Savings Institution,
from a judgment of the Supreme Court in favor of the plain-
tiff, entered in the office of the clerk of the county of New York
on the 27th day of April, 1916, upon the verdict of a jury
rendered by direction of the court, and also from an order
entered in said clerk's office on the 28th day of April, 1916,
denying defendant's motion for a new trial made upon the
minutes.

*George C. Holt* [*Henry W. Kennedy* with him on the brief],
for the appellant.

*Alvin C. Cass,* for the respondent.

LAUGHLIN, J.:

The plaintiff is a membership corporation and it brought this
action to recover a balance of $2,976.74 claimed to have been
on deposit to its credit on the 23d day of September, 1915, with

the defendant, which is a savings bank.   The defendant pleaded that on the 14th day of August, 1914, it paid to the plaintiff $2,000, and it admitted liability for the balance.   The verdict was directed for the entire amount claimed.

There is no controversy with respect to the facts.   The appeal presents a question of law only with respect to whether there was a payment of $2,000 by the defendant.   The alleged payment was made at the time stated on the presentation of the pass book by the president of the plaintiff and a draft, to the order of its trustees, on the defendant, under the seal of the plaintiff and signed by its president and in the names of its trustees whose signatures were, to the knowledge of the defendant, required to authorize payment.   The signatures of the trustees had been forged by the president.   The draft clerk of the defendant compared the signatures on the draft with genuine signatures on file with the defendant and was of opinion that they were genuine.   He made the usual entry in the day book of the defendant and in the pass book of the amount to be drawn and redelivered the draft to plaintiff's president and sent the pass book to the paying teller who, on presentation to him of the draft and after comparing the signatures with the genuine signatures and being of opinion that they were all the same, delivered to the president of the plaintiff defendant's check for $2,000 drawn to the order of the plaintiff on the Citizens Central National Bank, which was a commercial bank in which defendant had a deposit account.

The by-laws of the defendant provided, among other things, that drafts on deposits might be made by the depositor personally or by an order in writing, but that no person should have a right to demand either principal or interest without producing the pass book in order that the payment might be entered therein; that payments might be made "in specie, bills or by check," and that while the officers and clerks would endeavor to prevent fraud on depositors, all payments made to persons producing the pass book should be "good and valid payments."

The pass book having been presented it is conceded that the defendant, notwithstanding the by-law, was bound only to exercise reasonable care in determining the genuineness of the

signatures on the draft, and that a question of fact was presented with respect to whether in accepting the draft it was guilty of negligence, although a commercial bank would be liable as matter of law for payment on a forged signature, and the authorities so hold. (*Appleby* v. *Erie County Savings Bank,* 62 N. Y. 12; *Thomson* v. *Bank of British North America,* 82 id. 1; *Noah* v. *Bank for Savings,* 171 App. Div. 191; *Kelley* v. *Buffalo Savings Bank,* 180 N. Y. 171; *Schneider* v. *Union Dime Savings Bank,* 93 Misc. Rep. 166.) Therefore, since the verdict was directed, it must be assumed for the purposes of the appeal that the defendant was free from negligence in accepting the draft, and that if it had made the payment in money, as authorized by the by-law, the judgment could not be sustained.

Counsel for the appellant contends that the delivery of the check constituted payment since the contract, evidenced by the by-laws, authorized payment by check; but counsel for the respondent contends that the delivery to and acceptance by the plaintiff of the check was a conditional payment only, and that the defendant, in effect, contracted to pay the check to the plaintiff or upon its authorized indorsement, and that, in the absence of an express agreement that the check was to be taken in satisfaction and payment, there was no payment unless and until the check was paid in due course to the plaintiff or on its authorized indorsement. It appears that the president of the plaintiff indorsed the check in his official capacity and forged the indorsements of the two trustees thereon, and the next morning before banking hours requested one Jagocki, a steamship broker and private banker, to cash it. Jagocki, not having sufficient cash, accompanied the president of the plaintiff to the Mechanics' Bank of Brooklyn and introduced him to the manager as the president of the plaintiff, whereupon the manager offered to cash the check if Jagocki would indorse it. He did indorse it and thereupon the manager paid the money to the plaintiff and the same day presented the check through the clearing house to the bank on which it was drawn and it was honored. The president of the plaintiff misappropriated the proceeds of the check. The indorsement of the trustees was essential to pass title to the check, and it is, therefore, clear from the authorities

cited that such payment of the check was unauthorized, and that the drawee could not lawfully charge the same against the defendant's deposit account. (*Bank of British North America* v. *Merchants' Nat. Bank of N. Y.*, 91 N. Y. 106; *Kearny* v. *Metropolitan Trust Co.*, 110 App. Div. 236.) The evidence traces the check no further and presents no question of ratification by, or negligence on the part of, or estoppel as against the plaintiff in favor of the defendant.

The point presented for decision is, therefore, whether the plaintiff was limited to any remedy it had against the drawee or was at liberty to disregard the giving of the check and to elect to hold the defendant on the original indebtedness, as it did by bringing this action. It is quite clear, I think, that the mere delivery of the check to the president of the plaintiff, who was authorized to receive it, on the assumption that the defendant was not guilty of negligence in honoring the *draft*, did not constitute payment, for if the drawee had refused to honor the check, even though it had sufficient funds to the credit of the defendant, the plaintiff could not have recovered thereon against the drawee, and its only cause of action would have been against the defendant, either on the check or on the original indebtedness for which it was given. (*Hentz* v. *National City Bank*, 159 App. Div. 743; *Burstein* v. *Sullivan*, 134 id. 623.) If the president of the plaintiff, having thus forged the indorsements of the trustees on the check, had deposited the same to his own credit in another bank, such bank would be liable to the plaintiff for the proceeds of the check as for moneys had and received to its use (*Porges* v. *U. S. Mortgage & Trust Co.*, 203 N. Y. 181; *Robinson* v. *Chemical National Bank*, 86 id. 404; *Schmidt* v. *Garfield National Bank*, 64 Hun, 298; affd., 138 N.Y. 631); and in the case at bar it undoubtedly had a cause of action for conversion against the drawee for the value of the check. (*Burstein* v. *People's Trust Co.*, 143 App. Div. 165. See, also, *Moch* v. *Security Bank*, 166 App. Div. 121, 125; *Havana Central Railroad Co.* v. *Knickerbocker Trust Co.*, 198 N. Y. 422, 427; *Porges* v. *U. S. Mortgage & Trust Co.*, *supra*.) There are conflicting decisions on the question as to whether where a debtor gives a check to his creditor to pay an indebtedness and an employee or official of

the creditor cashes it without authority or even on a forged indorsement, that constitutes payment, on the theory that the only obligation of the drawer is to have funds on hand to meet the check and that when his funds are appropriated in payment of the check that ends his liability to the payee.   The appellant relies on *Burstein* v. *Sullivan* (*supra*); *Sage* v. *Burton* (84 Hun, 267, cited approvingly in *Allen* v. *Tarrant & Co.*, 7 App. Div. 172), and *Morrison* v. *Chapman* (155 id. 509) as sustaining that proposition; but in *Bernheimer* v. *Herrman* (44 Hun, 110, followed in *Falk* v. *Starr*, 31 Misc. Rep. 756); *Morris* v. *Hofferberth* (81 App. Div. 512); *Siegel* v. *Kovinsky* (93 Misc. Rep. 541); *Thomson* v. *Bank of British North America* (*supra*); and *Shepard & Morse Lumber Co.* v. *Eldridge* (171 Mass. 516, cited with approval in *Kearny* v. *Metropolitan Trust Co.*, *supra*) and *People's Trust Co.* v. *Smith* (215 N. Y. 489) the rule is stated to be that a payment by check constitutes a payment only when the check is paid *in due course*, and that payment thereof on a forged indorsement is not such payment, and that in the absence of proof of facts constituting estoppel against the payee he may sue the drawer and the latter must look to the bank which has wrongfully charged his account with the payment.   Without further considering the authorities I am of opinion that in the case at bar neither the delivery of the check nor the subsequent payment thereof on the forged indorsements constituted payment.   It was the defendant's check drawn against its own funds, and the drawee having wrongfully paid it could not lawfully charge it against the defendant. It was no more a payment than if the defendant had issued a draft or order on itself to the order of the plaintiff and subsequently honored the same on forged indorsements without exercising due care to discover whether or not they were genuine.

It follows that the judgment should be affirmed, with costs.

CLARKE, P. J., SCOTT, DAVIS and SHEARN, JJ., concurred.

Judgment affirmed, with costs.